Amy Wilkins Hoffman (SBN 022762)
**FROST LLP**
99 E. Virginia Ave., Ste. 220
Phoenix, Arizona 85339
Tel: 480-466-7005
amyh@frostllp.com

John V. Golaszewski*
New York Bar No. 4121091
**THE CASAS LAW FIRM, P.C.**
1740 Broadway, 15th fl.
New York, NY 10019
Tel: 855-220-9626
john@talentrights.law
*pro hac vice application forthcoming

*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alana Marie Souza a/k/a Alana Campos, a resident of California; Danielle Ruiz, a resident of California; Irina Vronina, a resident of California; Rosa Acosta, a resident of California; Jaime Edmondson Longoria, a resident of Arizona; Ina Schnitzer a/k/a Jordan Carver, a resident of Germany; Katarina Van Derham, a resident of California; Melanie Iglesias, a resident of California; and John Coulter, a resident of California, <br><br> Plaintiffs, <br><br> - against - <br><br> Encounters, LLC, an Arizona limited liability company d/b/a Club Encounters; Mag Com, Inc., an Arizona corporation d/b/a Club Encounters; and Frank Magarelli and Jane Doe Magarelli, husband and wife, <br><br> Defendants. | Case No. _____ <br><br><br> **<u>COMPLAINT</u>** <br><br> (Jury Trial Demanded) |

1

Plaintiffs Alana Marie Souza a/k/a Alana Campos, Danielle Ruiz, Irina Voronina, Rosa Acosta, Jaime Edmondson Longoria, Ina Schnitzer a/k/a Jordan Carver, Katarina Van Derham, Melanie Iglesias, and John Coulter (collectively, "Plaintiffs"), for their Complaint against defendants Encounters, LLC d/b/a Club Encounters; Mag Com, Inc., d/b/a Club Encounters, and Frank Magarelli (collectively, "Defendants"), respectfully allege as follows:

## BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their swingers' club, Club Encounters, located in Phoenix, Arizona ("Swingers' Club" or "Club Encounters").

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Common Law Right of Publicity; c) Unfair or Deceptive Trade Practices, A.R.S. Title 44, Chapter 9, et seq.; d) Common Law Unfair Competition; e) Defamation; f) Negligence and Respondeat Superior; g) Conversion; h) Unjust Enrichment; and i) Quantum Meruit.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted pursuant to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional

models who reside throughout the United States and abroad.

7. According to publicly available records, Defendant Encounters, LLC, is a limited liability company formed under the laws of the state of Arizona, with its principal place of business located at 9035 N 8th St., Phoenix, Arizona, 85020. Upon information and belief, Encounters, LLC operates Club Encounters, which is located at 3037 W Clarendon Ave, Phoenix, Arizona, 85017.

8. According to publicly available records, Defendant Mag Com, Inc., is a corporation formed under the laws of the state of Arizona, with its principal place of business located at 3037 W Clarendon Ave, Phoenix, Arizona, 85017. Upon information and belief, Mag Com, Inc., operates Club Encounters, which is located at 3037 W Clarendon Ave, Phoenix, Arizona, 85017.

9. According to publicly available records, Defendant Frank Magarelli, an Arizona resident, is an owner and/or CEO of Mag Com, Inc.

10. Venue is proper in the United States District Court for the District of Arizona because Defendants' principal place of business is located in Phoenix, Arizona.

11. A significant portion of the alleged causes of action arose and accrued in Phoenix, Arizona and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Phoenix, Arizona.

## PARTIES

*Plaintiffs*

12. Plaintiff Alana Souza a/k/a Alana Campos ("Campos") is a well-known professional model and a resident of Los Angeles County, California.

13. Plaintiff Danielle Ruiz ("Ruiz") is a well-known professional model and a resident of Los Angeles County, California.

14. Plaintiff Irina Voronina ("Voronina") is a well-known professional model and a resident of Los Angeles County, California.

15. Plaintiff Rosa Acosta ("Acosta") is a well-known professional model and a

resident of Los Angeles County, California.

16.    Plaintiff Jaime Edmondson Longoria ("Longoria") is a well-known professional model and a resident of Maricopa County, Arizona.

17.    Plaintiff Jordan Carver ("Carver") is a well-known professional model and a resident of Germany.

18.    Plaintiff Katarina Van Derham ("Derham") is a well-known professional model and a resident of Los Angeles County, California.

19.    Plaintiff Melanie Iglesias ("Iglesias") is a well-known professional model and a resident of Los Angeles County, California.

20.    Plaintiff John Coulter ("Coulter") is a well-known professional model and a resident of Los Angeles County, California.

***Defendants***

21.    Defendant Encounters, LLC, is a limited liability company formed under the laws of the state of Arizona and registered to conduct business in Arizona. During times relevant to this action, Encounters, LLC operated Club Encounters in Phoenix, Arizona.

22.    Defendant Mag Com, Inc., is a corporation formed under the laws of the state of Arizona and registered to conduct business in Arizona. During times relevant to this action, Mag Com, Inc., operated Club Encounters in Phoenix, Arizona.

23.    Defendant Frank Magarelli, in his capacity as principal, owner and/or CEO of Mag Com, Inc., maintained operational control over Mag Com, Inc., including all advertising relating thereto.

## FACTUAL ALLEGATIONS

24.    Each Plaintiff is a well-known professional model who earns his/her livelihood modeling and licensing his/her Images to companies, magazines and individuals for the purpose of advertising products and services.

25.    Plaintiffs' careers in the modeling industry place a high degree of value on

good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies and brands for which they model.

26.    Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

27.    In the case of each Plaintiff, this apparent claim was false.

28.    Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

29.    No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of his/her Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

30.    Further, in certain cases, Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow his/her fan base, and build and maintain his/her brand.

**Plaintiffs' Individual Backgrounds and Careers**

31.    Campos is a Brazilian model who started working at the age of 15. Campos was scouted by the director of Ford Models, which remained her agency for five years. While she was nominated in numerous beauty pageants in her country, she decided to move to the United States at 20 and is currently represented by Wilhelmina Models. Campos has been published in *Playboy*, *Astonish*, *Viva Glam*, and *Bliss* magazines. She has also been in many campaigns such as Arden B, Target, Chynna Dolls, Frederick's of Hollywood, I Collection, Elegant Moments, Drift Eyewear, Sexy Dresses, Sachika, Marisa Kenson, Sports Calendar, and appeared as a spokesmodel for My Body Journey

and as a cover girl for *Arizona Foothills Magazine*. In addition, Campos was featured in the movie "Last Vegas" with Robert DeNiro, Morgan Freeman, and Michael Douglas.

32.     That we know of, Campos is depicted in the photo in Exhibit "A" to promote Club Encounters on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Campos was either an employee working at Club Encounters, that she endorsed Club Encounters, or that she was otherwise associated or affiliated with Club Encounters.

33.     Campos has never been employed at Defendants' establishment, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

34.     Ruiz is a veteran of the entertainment industry and an extremely accomplished, established, and highly sought model, host, and actor. She shot to fame by winning Miss Hawaiian Tropic Brazil and competing worldwide. As a model, she has worked for Foreplay Lingerie, Elegant Moments, Escante Lingerie, Hustler Apparel, Body Zone Apparel, and Ziggy NY Shoes. She was also a contract model for Fredericks of Hollywood, L*Space, Rockstar Energy's Miss Motorcross, and Monster Energy Dime Squad Girl. She has appeared in many magazines and graced the covers of *Maxim* and *Elegant*. She has made television appearances on "The New Girl," "The Finder," "Breaking In," "Cougar Town," "CSI Entourage," "The Jonas Brothers," "Miami Trauma," "Dark Blue," "Love Bites," "Friends with Benefits," "Battle LA," "The Ex's," and hosting the series "WPT Royal Flush." She has over 182,000 followers on Instagram and over 16,000 followers on Twitter.[1]

35.     That we know of, Ruiz is depicted in the photo in Exhibit "B" to promote Club Encounters on its Facebook page. This Image was intentionally altered to make it

---

[1]In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

appear that Ruiz was either an employee working at Club Encounters, that she endorsed Club Encounters, or that she was otherwise associated or affiliated with Club Encounters.

36.    Ruiz has never been employed at Defendants' establishment, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

37.    Voronina is an international model and actress. After becoming Playboy's Miss January 2001, she represented international brands including SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour to name a few. She has millions of visual impressions around the globe via the covers and pages of worldwide magazines such as *FHM*, *Maxim*, *Playboy* (in 20 countries), *Max*, *Ocean*, *Shape*, *944*, *Knockout*, *Q*, *People*, *Kandy*, *Rukus*, *Vape* and *Browz* magazines. In 2008, Voronina was named St. Pauli Girl spokes model and completed a 12-month public relations tour across America. She became the first ever St. Pauli Girl to ring the NYSE closing bell representing Constellation Brands.  In 2013, Voronina was named Kandy Magazine's Model of the Year as a result of her fans downloading the highest number of digital issues that year. Voronina got her first big screen break in "Reno 911! Miami." Her credits include a series regular role in the fully improvised sitcom "Svetlana" for HD Net, the first ever live action show on Adult Swim Network "Saul of the Mole Men," guest star appearance on Nickelodeon's "iCarly," Comedy Central's "Reno 911!", and feature film parts in "Balls of Fury," & "Piranha 3DD," "Laser Team," and "Killing Hasselhoff." She starred in the indie action flick "Scramble," which she also co-produced. Voronina tours and performs nationally as a stand-up comedian. She loves connecting with her fans and stays active daily across all social media outlets for her followers on Facebook, Instagram, X (formerly known as Twitter) and YouTube. She has more than 5.6 million social media followers.

38.    That we know of, Voronina is depicted in the photo in Exhibit "C" to

promote Club Encounters on its Facebook page. This Image was intentionally altered to make it appear that Voronina was either an employee working at Club Encounters, that she endorsed Club Encounters, or that she was otherwise associated or affiliated with Club Encounters.

39.    Voronina has never been employed at Defendants' establishment, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

40.    Acosta started her classic ballet studies at the age of four at the *Centro de la Cultura* in Santiago, Dominican Republic. She later moved on to the ICA (*Instituto de Cultura y Arte*), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a bachelor's in art with mention to Classic Ballet, she became part of the *Dominican Nacional Ballet* as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she was nominated twice by the *Secretaria de Estado de la Juventud* for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 52,000 Facebook followers, over 1.6 million Instagram followers, and over 280,600 Twitter followers.

41.    That we know of, Acosta is depicted in the photo in Exhibit "D" to promote Club Encounters on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Acosta was either an employee working at Club Encounters, that she endorsed Club Encounters, or that she was otherwise associated or affiliated with Club Encounters.

42.    Acosta has never been employed at Defendants' establishment, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

43.    Longoria comes from a family of police officers. She graduated from Florida Atlantic University with a degree in Criminal Justice in 2002. She worked the night shift as a police officer in Boca Raton, Florida for two years until quitting to become a cheerleader for the Miami Dolphins. Longoria was a participant in the competitive reality TV series "The Amazing Race 14." Longoria was "Playmate of the Month" in the January 2010 issue of *Playboy*. She has been a sports blogger for *Playboy* online and co-host of Sirius Fantasy Sports Radio. She appeared on "The Bunny House" documentary, in the Trace Adkins video for "This Ain't No Love Song," and numerous other television, print, radio, and online outlets. Longoria and her husband, MLB Superstar Evan Longoria, have three children.

44.    That we know of, Longoria is depicted in the photo in Exhibit "E" to promote Club Encounters on its Facebook page. This Image was intentionally altered to make it appear that Longoria was either an employee working at Club Encounters, that she endorsed Club Encounters, or that she was otherwise associated or affiliated with Club Encounters.

45.    Longoria has never been employed at Defendants' establishment, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

46.    Carver is a German glamour model and actress based in the United States. Jordan became a commercial spokeswoman for online German consumer electronics giant Redcoon. She set a record by appearing on the cover of Britain's *Zoo* magazine six times. Jordan won the contest for the racing sport seat production company COBRA and

became their spokesmodel, a position she held until recently. She later won second place on the Top 100 Internet Model Newcomer of the Year list after being nominated by Break Media. She has over 2 million followers on Instagram, over 636,000 followers on Twitter, and over 18,000 followers on Facebook.

47.    That we know of, Carver is depicted in the photo in Exhibit "F" to promote Club Encounters on its Facebook page. This Image was intentionally altered to make it appear that Carver was either an employee working at Club Encounters, that she endorsed Club Encounters, or that she was otherwise associated or affiliated with Club Encounters.

48.    Carver has never been employed at Defendants' establishment, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

49.    Van Derham is a successful model, actress, philanthropist, and entrepreneur. As a model, Van Derham graced over 60 magazine covers and appeared in over 600 media outlets including the Times Square jumbotron, CNN, FOX, and NBC. She appeared in 17 national and international print and TV commercials and has been voted one of the 100 sexiest women in the world by magazines on three different continents. Van Derham made history by being the only St. Pauli Girl spokesmodel who got re-elected. As an actress, she played opposite Bob Saget in the TV show, "Entourage," and plays one of the lead roles in the movie, "Unbelievable!!!!" alongside Nichelle Nichols, Tim Russ, and Gilbert Gottfried. Currently, Van Derham is working on the movie "Vendetta Vette." She is also a founder, CEO, and Editor-in-Chief of classic, glamour lifestyle magazine, *VIVA GLAM*. Her well-respected status gets her invited as a judge of model contests and beauty pageants around the globe. She has over 210,000 Instagram followers, over 11,000 Twitter followers, and over 190,000 Facebook followers.

50.    That we know of, Derham is depicted in the photo in Exhibit "G" to

promote Club Encounters on its Facebook page. This Image was intentionally altered to make it appear that Derham was either an employee working at Club Encounters, that she endorsed Club Encounters, or that she was otherwise associated or affiliated with Club Encounters.

51.    Derham has never been employed at Defendants' establishment, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

52.    Iglesias is an American model, actress, and social media influencer. After being voted *Maxim's* "Hometown Hotties" winner in 2010, she has been featured in magazines such as *World's Most Beautiful*, *Esquire*, and *Vibe*. Iglesias has appeared in the World Poker Tour series and also appeared as herself on all seasons of Mtv's "Guy Code" and "Girl Code." She also stars in the "Guy Code" spin off "Guy Court." She has appeared as a guest on the Ellen DeGeneres show, she hosted the MLB Fan Cave, and has her first starring role in a feature film "Abnormal Attraction" released in 2018. Her social media consists of 1.2 million Instagram followers, over 1.5 million Facebook followers, and 602,000 X followers.

53.    That we know of, Iglesias is depicted in the photo in Exhibit "H" to promote Club Encounters on its Facebook page. This Image was intentionally altered to make it appear that Iglesias was either an employee working at Club Encounters, that she endorsed Club Encounters, or that she was otherwise associated or affiliated with Club Encounters.

54.    Iglesias has never been employed at Defendants' establishment, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

55.    Coulter was born in Arizona. He spent two years studying illustration on a

full art scholarship at the University of Arizona before continuing his studies at the prestigious Art Center College of Design in Pasadena. Coulter also pursued performing arts, which led him to "The Happiest Place on Earth." At Disneyland, he worked both as an artist in the entertainment art department and moonlighted as Prince Charming in the Main Street Electrical Parade before going on to play other Disney characters. One of the highlights was playing Tarzan in the opening cast of *Tarzan Rocks*. His princely charm also took him to Tokyo Disneyland, where he continued to perform several roles. Coulter's modeling career has lasted over 20 years leading him to New York and Europe where he worked with renowned photographers Ellen Von Unwerth and David Lachapelle. He shot a jeans campaign with Cindy Crawford and a MAC Cosmetics campaign with Mary J. Blige and Lil' Kim. He has walked the runways with Naomi Campbell, Kate Moss, Marcus Schenkenberg and Tyson Beckford and has appeared in television commercials with Paris Hilton, Heidi Klum, Kristen Chenoweth, and Karolina Kurkova. Coulter has been on Tyra Bank's "America's Next Top Model," in a Madonna video directed by Guy Ritchie, and can be seen on the Britney Spears' Blackout Album as the controversial priest. He has graced the packaging and ads for Joe Boxer, Fruit of the Loom, Murano, Undergear and International Male. His fine arts background has manifested itself in many areas such as costuming, photo and fashion styling, as well as hair and makeup.

56.    That we know of, Coulter is depicted in the photo in Exhibit "I" to promote Club Encounters on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Coulter was either an employee working at Club Encounters, that he endorsed Club Encounters, or that he was otherwise associated or affiliated with Club Encounters.

57.    Coulter has never been employed at Defendants' establishment, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of his Image,

and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business Activities and Misappropriation***

58.    Defendants operate (or operated, during the relevant time period) a Swingers Club, where they are (or were) engaged in the business of operating a sexually-charged venue where couples are encouraged to swap partners and engage in sexual activity on the premises.

59.    Defendants own, operate, and control Club Encounters' social media accounts, including its Facebook, Twitter, and Instagram accounts.

60.    Defendants used Club Encounters' Facebook, Twitter, and Instagram accounts to promote Club Encounters and to attract patrons.

61.    Defendants did this for their own commercial and financial benefit.

62.    Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Club Encounters, endorsed Club Encounters, or was otherwise associated or affiliated with Club Encounters.

63.    Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Club Encounters to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

64.    Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Club Encounters, and at no point have any of the Plaintiffs ever endorsed Club Encounters or otherwise been affiliated or associated with Club Encounters.

65.    All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of

Plaintiffs.

66.    Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

67.    Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

68.    It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

69.    The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

70.    Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

71.    Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Club Encounters.

72.    Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

73.    In addition, Plaintiffs allege that the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with

Club Encounters.

74.    At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

75.    No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

76.    No Defendant ever paid any Plaintiff for its use of their Images on any promotional materials, including Club Encounters website, Twitter, Facebook, or Instagram accounts.

77.    Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of their right to use their Images.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

78.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

79.    The provisions of the Lanham Act, 15 U.S.C. §1125, et seq. apply to Defendants and protect Plaintiffs from the conduct described herein.

80.    Defendants used Plaintiffs' Images, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Defendants or worked at as employees, sponsored, approved, or endorsed Defendants' goods, services or commercial activities.

81.    This was done to promote and attract clientele to Defendants, and thereby generate revenue for Defendants. Thus, this was done in furtherance of Defendants' commercial benefit.

82.    Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Defendants, nor worked at, sponsored, or approved of Defendants' goods, services or commercial activities,

Defendants nevertheless used Plaintiffs' Images in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendants.

83.    Defendants knew that its use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment with Defendants' establishment.

84.    Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of the Defendants' establishment, and the goods and services provided by Defendants.

85.    Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial, but in all events, not less than seventy-five thousand dollars ($75,000), and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Common Law Right of Publicity)

86.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

87.    As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in their Image, photo, persona and likeness.

88.    Said commercial interest was developed by each Plaintiff through his or her investment of time, effort and money in their career, image, persona and likeness.

89.    As set forth herein, Defendants used each Plaintiffs' Image and likeness for commercial purposes by using same in Defendants' advertising.

90.    Defendants did so without the consent of any Plaintiff, written or otherwise.

91.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants republicized Plaintiffs' Image and likeness on

16

various occasions, via different mediums, after the initial date of the posting of their Image and likeness and through the filing of this complaint.

92.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' Image and likeness was altered so as to reach a new audience and/or promote a different product.

93.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Defendants' establishment.

94.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

95.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

96.    In addition, because Defendants' actions in misappropriating Plaintiffs' Images and violating their common law right of publicity was willful and outrageous, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Unfair or Deceptive Trade Practices, A.R.S. Title 44, Chapter 9, et seq.)

97.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

98.    Defendants operated the Defendants' website and social media accounts in order to promote the establishment, to attract clientele thereto, and to thereby generate revenue for Defendants

99.    As such, Defendants' operation of the website and social media accounts, and its publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Arizona.

100.    Defendants published Plaintiffs' Images on the Defendants' website and social media accounts in order to create the false impression that Plaintiffs were either

employees working at the establishment, endorsed the establishment, or were otherwise affiliated, associated, or connected with the establishment.

101.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Defendants' establishment.

102.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants republicized Plaintiffs' Image and likeness on various occasions, via different mediums, after the initial date of the posting of their Image and likeness and through the filing of this complaint.

103.    Defendants' advertising practices offends the public policy of Arizona insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendants' commercial benefit.

104.    Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, or are associated with the establishment.

105.    Defendants' advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are employees or entertainers at, endorse, or are otherwise affiliated with, their establishment.

106.    There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants' own commercial interests.

107.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on their website and social media accounts, Plaintiffs were harmed.

108.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FOURTH CAUSE OF ACTION
### (Common Law Unfair Competition)

109.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

110.    Defendants operated the Defendants' website and social media accounts in order to promote the establishment, to attract clientele thereto, and to thereby generate revenue for Defendants.

111.    As such, Defendants' operation of the website and social media accounts, and its publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Arizona

112.    Defendants published Plaintiffs' Images on the Defendants' website and social media accounts in order to create the false impression that Plaintiffs were either employees working at the establishment, endorsed the establishment, or were otherwise affiliated, associated, or connected with the Defendants' establishment.

113.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Defendants' establishment.

114.    Such conduct constitutes unfair and deceptive acts and practices, and unfair competition under Arizona law.

115.    Defendants' advertising practices offends the public policy of Arizona insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendant commercial benefit.

116.    Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with their establishment.

117.    Defendants' advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are employees or entertainers at, endorse, or are otherwise affiliated with, their establishment.

118.    There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants' own commercial interests.

119.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on their establishment's website and social media accounts, Plaintiffs were harmed.

120.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

**FIFTH CAUSE OF ACTION**
**(Defamation)**

121.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

122.    As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote their establishment to the general public and potential clientele.

123.    Defendants' publication of said Images constitutes a representation that Plaintiffs were either employed by the Defendants, that they endorsed their establishment, or that they had some affiliation with their establishment.

124.    None of these representations were true. In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were employees working at their establishment or endorsed their establishment.

125.    Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by their

establishment, had no affiliation with their establishment, had not consented to the use of their Images, and had not been compensated for the use of their Images.

126.    In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by their establishment, had no affiliation with their establishment, had not consented to the use of their Images, and had not been compensated for the use of their Images.

127.    Despite Defendant's knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

128.    Defendants' publication of Plaintiffs' Images constitutes defamation under Arizona law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., working as an entertainer and/or endorsing Club Encounters - which would subject each Plaintiffs to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

129.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation per se under Arizona law because said publication would tend to injure each Plaintiff in their trade, business, and profession as  professional models.

130.    Any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that they were associated with Defendants' establishment, an inference which Defendants' publication of the Images support.

131.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation per se under Arizona law because said publication falsely portrays each of the Plaintiffs as an employee, member, patron, entertainer, or otherwise associated with Defendants and in doing so imputes unchastity to them.

132.    Defendants' publication of Plaintiffs' Images caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**SIXTH CAUSE OF ACTION**
**(Negligence and Respondeat Superior)**

133.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

134.    Plaintiffs are further informed and believe and hereon allege that Defendants maintained or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

135.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices

136.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

137.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices

138.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for

22

promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

139.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with Federal and Arizona law, were not violated. Defendants breached their duty of care to Plaintiffs and consumers by their negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

140.    Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

141.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Conversion)

142.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

143.    Each Plaintiff is, and at all relevant times was, the exclusive owner of all right, title and interest in its Image, and has property interests thereon.

144.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain.

145.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## **EIGHTH CAUSE OF ACTION**
### **(Unjust Enrichment)**

146.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

147.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Defendants' establishment to the general public and potential clientele.

148.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs are either employees or entertainers working at the establishment, or otherwise endorsed the same.

149.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

150.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

151.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their establishment.

152.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

153.    As such, Plaintiffs  have been damaged in an amount to be determined at trial.

## **NINTH CAUSE OF ACTION**
### **(Quantum Meruit)**

154.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

155.    Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

156.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances

157.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work for, endorse, or are otherwise affiliated with their establishment, Defendants have not compensated Plaintiffs.

158.    Plaintiffs are therefore entitled to reasonable compensation for Defendant's unauthorized use of their Images.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote Club Encounters;

(c) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 ;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117;

(e) For such other and further relief as the Court may deem just and proper.

Respectfully submitted December 12, 2024.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FROST LLP


By:/s/ Amy W. Hoffman
Amy W. Hoffman
99 E. Virginia Ave., Ste. 220
Phoenix, Arizona 85004
Tel: 480-466-7005
amyh@frostlegal.com


John V. Golaszewski
New York Bar No. 4121091
Pro Hac Vice Application Pending
**THE CASAS LAW FIRM, P.C.**
1740 Broadway, 15th fl.
New York, NY 10019
Tel: 855-220-9626
john@talentrights.law

Attorneys for Plaintiffs